IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| KELLY G., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI[1], <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 2:20-cv-563 |

# REPORT AND RECOMMENDATION

Plaintiff Kelly G. ("Plaintiff") filed this action pursuant to 42 U.S.C. 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 15.

Presently before the Court are the parties' cross motions for summary judgment, ECF Nos. 17, 19. Plaintiff argues that the ALJ erred in finding that Plaintiff is "not disabled" because the

---

[1] On July 9, 2021, Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security, replacing former Commissioner of Social Security Andrew Saul. Accordingly, the Court substitutes Acting Commissioner Kilolo Kijakazi for Andrew Saul in this matter pursuant to Federal Rule of Civil Procedure 25(d).

ALJ did not adequately account for Plaintiff's moderate pace limitations, and because the ALJ failed to resolve a conflict in the vocational expert's testimony. ECF No. 18 at 5–13.

After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 17, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 19, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI in April 2018, alleging disability due to bipolar disorder, depression, anxiety, panic disorder, paranoia, and attention deficit hyperactivity disorder ("ADHD"). R. at 70, 88, 238–39, 244–45.[2] Plaintiff's applications were initially denied on August 31, 2018, and again denied upon reconsideration on December 13, 2018. R. at 105, 107, 137, 139. On February 1, 2019, Plaintiff requested a before an administrative law judge. R. at 191.

A hearing was held on January 30, 2020, at which Plaintiff appeared with counsel before Administrative Law Judge Kerith Cohen ("the ALJ"). R. at 34–68. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 38–67. On March 4, 2020, the ALJ issued a decision finding Plaintiff not disabled. R. at 10–23. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied, making the ALJ's decision the final decision of the Commissioner. R. at 1, 234–36.

---

[2] "R." refers to the certified administrative record that was filed under seal on March 31, 2021, ECF No. 14, pursuant to Local Civil Rules 5(B) and 7(C)(1).

Having exhausted her administrative remedies, on November 11, 2020, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. On June 8, 2021, Plaintiff filed a motion for summary judgment and accompanying memorandum in support. ECF Nos. 17–18. On July 4, 2021, the Commissioner filed a motion for summary judgment and brief in support. ECF No. 19–20. Plaintiff filed a reply on July 20, 2021. ECF No. 21. Because the motions are fully briefed, the matter is now ripe for recommended disposition.

## II. **RELEVANT FACTUAL BACKGROUND**

The Record included the following factual background for the ALJ to review:

Plaintiff was thirty-three years old at the time of her alleged disability onset date of September 27, 2019.[3] R. at 69, 109. Plaintiff has a tenth-grade education, does not have a driver's license, and lives with her mother. R. at 39–40, 43. Plaintiff last worked in pool maintenance, a job which she held for approximately three weeks. R. at 42. In the past, Plaintiff also worked as a restaurant server and a cashier. R. at 64. Plaintiff struggled with substance abuse and mental impairments prior to the alleged onset date. R. at 47–49.

### A. **Plaintiff's Medical Records Relevant to Alleged Mental Impairments[4]**

Plaintiff was admitted to the Virginia Beach Psychiatric Center in May 2017 because she was having suicidal thoughts and other psychiatric symptoms. R. at 348–51. After Plaintiff was stabilized, she was prescribed medication to treat her psychiatric symptoms, "began to function in a normal adult manner," and was discharged. R. at 343. In October 2018, Plaintiff admitted herself to the psychiatric ward at Sentara Norfolk General Hospital because she was experiencing

---

[3] Plaintiff initially alleged a disability onset date of May 1, 2017, but at the hearing, amended the alleged disability onset date to September 27, 2019, when Plaintiff reestablished mental health treatment. R. at 10, 37.

[4] Because Plaintiff's physical impairments are not at issue, the Court does not address Plaintiff's medical records relating to her physical impairments.

3

psychiatric symptoms following consumption of alcohol, an unknown drug, and not taking her psychiatric medications consistently. R. at 721, 729. Plaintiff appeared irritable and anxious, and reported auditory hallucinations and paranoia. R. at 725. Plaintiff was discharged the following day with instructions to take her medication as prescribed, and a plan to follow up at Virginia Beach Department of Human Services. R. at 729, 732.

Between late 2018 and early 2019, Plaintiff spent some time incarcerated after an incident involving her Mother. R. at 52–53, 582. Following her release in February 2019, Plaintiff followed up with Virginia Beach Department of Human Services at the direction of her parole officer. *See e.g.*, R. at 619–23, 633–37, 642–48, 659–69. Plaintiff endorsed feeling paranoid and anxious. R. at 660. Plaintiff reported that her symptoms improved when she was working. R. at 582. In September 2019, Plaintiff began attending therapy sessions with a licensed professional counselor, Mark Schar. 678–86, 689–90, 694–95, 700–05. Although Plaintiff generally reported feeling better in January 2020, she still experienced auditory hallucinations. R. at 704. Plaintiff also began attending stress management group therapy in November 2019, and continued through January 2020. R. at 687–88, 691–93, 696–99, 706–10.

### C. Plaintiff's Testimony at ALJ Hearing

At the ALJ hearing, Plaintiff testified that she did not graduate high school and was still in the process of obtaining her GED. R. at 39. Plaintiff explained that she goes to counseling, participates in a stress management program, and sees a psychiatrist. R. at 46. During her days, Plaintiff testified that she often sleeps, walks her dogs if she feels up to it, reads, journals, and watches YouTube. R. at 49–52, 54. Plaintiff stated that she can prepare microwavable meals, and has trouble completing chores. R. at 49–50, 58. Plaintiff explained that she feels more comfortable doing activities such as taking her dogs to the park and going to the grocery store at night, so that

4

she is not seen by others. R. at 50–51. Plaintiff testified that during an average week, she has six bad days and one good day. R. at 55–56. She explained that she has spells where she feels "bed bound" and goes without showering for several days. R. at 57. Plaintiff has struggled in the past with alcohol and drug use. R. at 47–49, 53, 60.

As for her past work history, Plaintiff explained that she has worked full-time, but gets paranoid that her bosses and other co-workers are talking about her. R. at 55. Plaintiff stated that ideally she would like to work or volunteer at an animal shelter, and would be able to work at one if she did not have to communicate with others often and did not have to be on her feet too long. R. at 45, 62. Plaintiff explained that her biggest obstacle to obtaining full time employment was that she gets very overwhelmed and experiences panic attacks. R. at 61. While by herself at home, Plaintiff said she does not get panic attacks, and feels most comfortable isolated by herself. R. at 58, 61–62.

### D. The Vocational Expert's Testimony at ALJ Hearing

At the hearing, vocational expert Barbara Byers ("the VE") testified about jobs that Plaintiff could perform. The ALJ presented the VE with three hypotheticals. The first hypothetical asked the VE to assume that the hypothetical individual:

> has no exertion limits, but is able to understand…remember and follow simple instructions and perform simple routine tasks for two-hour increments, in a non-production case workplace and can occasionally interact with the public, coworkers and supervisors . . . can adapt to and manage a low stress environment, defined as one that requires only occasional decision-making and occasional changes in the work setting.

R. at 64. The VE testified that the hypothetical individual could perform the jobs of dining room attendant, hand packager, and industrial cleaner. R. at 64–65.

The second hypothetical modified the social interaction limitations from hypothetical one, and asked the VE to assume that "the individual should not have any face-to-face interaction with

5

the general public while performing work tasks, or perform tandem tasks or teamwork. R. at 65. The VE testified that the hand packager and industrial cleaner jobs would still be available. R. at 65. The VE testified that the position of laundry laborer would also be available, and would have less social interaction. R. at 66. Further, the ALJ asked the VE to identify additional jobs matching hypothetical number two at the light exertional level due to Plaintiff's limitations with her right foot. R. at 67. The VE stated that at the light, unskilled work level, a hypothetical person could perform the jobs of mail sorter, folding machine operator, and marking clerk. R. at 67.

The third hypothetical asked the VE to assume that "due to symptom flare ups, the individual would need to take additional breaks throughout the day, and therefore be off-task more than 15 percent of the work day, in addition to customary breaks, and would be absent more than two days per month." R. at 66. The VE testified that such limitations, either individually or in combination, would preclude competitive employment. The VE explained that generally, employers would tolerate no more than 10 percent of the workday off-task, and no more than one absence per month. R. at 66.

The ALJ then asked the VE whether there were any inconsistencies or conflicts between her testimony and the Dictionary of Occupational Titles. R. at 66. The VE responded that the Dictionary of Occupational Titles does not address absences and time off task, and that her testimony was based on her professional training and experience as a vocational counselor. R. at 67. The VE twice confirmed to the ALJ that there were no inconsistencies or conflicts between her testimony and the DOT. R. at 66, 67.

### III. THE ALJ'S DECISION

The ALJ conducts a five-step sequential evaluation process to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35

(4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. §§ 404.1545(a), 416.945(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

7

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. R. at 12. At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, generalized anxiety disorder, panic disorder, posttraumatic stress disorder, major depressive disorder, attention deficit disorder, personality disorder, substance abuse disorder, and obesity. R. at 13.

At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 13–14. Relevant to the instant matter, in evaluating Listing 12.00, the ALJ specifically examined the criteria for listings 12.04, 12.06, 12.11, and 12.15, and whether "paragraph B" criteria—intended to evaluate Plaintiff's abilities in the four areas of mental functioning—was met, or whether "paragraph C" criteria—intended to evaluate serious and persistent mental disorders—was met. R. at 14. Ultimately, the ALJ concluded that because Plaintiff's mental impairments did not "cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria were not satisfied." R. at 20. The ALJ also concluded that because Plaintiff's mental disorders are not serious and persistent, the "paragraph C" criteria were not satisfied. R. at 20.

After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at any exertional level, with the following nonexertional limitations:

> [Plaintiff] can understand, remember, and follow simple instructions, and perform simple, routine tasks for two hour increments, in a nonproduction pace workplace. She can occasionally interact with supervisors while performing work tasks, but cannot have face to face interaction with the general public while performing work tasks. [Plaintiff] cannot perform tandem tasks or teamwork with coworkers. [Plaintiff] can adapt to and manage a low stress environment, defined as one that requires only occasional decision making and occasional changes in the work setting.

R. at 15. In making this determination, the ALJ considered all of Plaintiff's symptoms, and the extent to which Plaintiff's symptoms were consistent with the objective medical evidence and other evidence, and the medical opinions in the record. R. at 16.

At step four, the ALJ determined that Plaintiff was incapable of performing her past relevant work as a waitress/sever, which is considered light work performed at a semiskilled level. R. at 21. While Plaintiff cannot resume her prior employment, the ALJ determined at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy. R. at 21–22. Relying on the VE's testimony, the ALJ found that Plaintiff would be able to perform the representative occupations of hand packager, industrial cleaner, laundry laborer, mail sorter, folding machine operator, and marking clerk. R. at 22. Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date through the date of the decision. R. at 22.

## IV. **STANDARD OF REVIEW**

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Britt v. Saul*, No. 19-2177, 2021 WL 2181704, at *2 (4th Cir. May 28, 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises two main challenges to the ALJ's decision. Plaintiff alleges that the ALJ erred by: (1) failing to define "non-production rate pace" in Plaintiff's RFC; and (2) failing to resolve the conflict between Plaintiff's RFC and the VE's testimony at Step Five. ECF No. 18 at 5–14.

### A. The ALJ Sufficiently Defined "Non-Production Pace" in Plaintiff's RFC.

Plaintiff argues that the ALJ's failure to define non-production rate pace in Plaintiff's RFC requires remand. Relying on *Thomas v. Berryhill* and *Perry v. Berryhill*, Plaintiff argues that it is insufficient for an ALJ to use "non production rate pace" or other similar language unless the ALJ also defines that phrase. ECF No. 18 at 6 (citing *Thomas*, 916 F.3d 307 (4th Cir. 2019) and *Perry*, 765 Fed. App'x 869 (4th Cir. 2019)). In response, the Commissioner argues that the ALJ's explanation of Plaintiff's RFC demonstrate that the ALJ reasonably considered and assessed Plaintiff's ability to stay on task, and that the ALJ provided additional context to help explain the "non-production rate pace" restriction in Plaintiff's RFC. ECF No. 20 at 10–14.

10

If an ALJ finds that a claimant has a moderate impairment in concentration, persistence, and pace, the ALJ generally must account for those limitations in the claimant's RFC, or explain why such limitations are not required. *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) (remanding case because an ALJ does not account for moderate limitations in concentration, persistence, and pace by limiting a claimant's RFC to simple, routine tasks or unskilled work); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2021) (remanding because ALJ found moderate limitation in concentration, persistence, and pace, but failed to include any corresponding limitations in the claimant's RFC without a sufficient explanation why corresponding limitations were not required).

ALJs have attempted to account for pace limitations when formulating residual functional capacities by addressing a rate of "production" that is suitable for the claimant. However, the Fourth Circuit has expressed skepticism regarding pace limitations that contain language about a "production" or "non-production" rate pace, and have required that ALJs either define that phrase or provide sufficient context for the phrase to allow the court to meaningfully evaluate whether it adequately addresses moderate impairments involving pace. *See, e.g., Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019); *Perry v. Berryhill*, 765 F. App'x 869, 870 (4th Cir. 2019).

In *Thomas*, the Fourth Circuit remanded a case where the ALJ stated a residual functional capacity that the claimant "could not perform work 'requiring a production rate or demand pace'" because the ALJ did not provide sufficient information for the court to understand the meaning of those terms. 916 F.3d at 312. Similarly, in *Perry*, the Fourth Circuit explained that it was "difficult, if not impossible" for the court to determine whether a "non-production oriented work setting" properly accounts for limitations in concentration, persistence, and pace, because there is no regulatory definition for the phrase, nor is it commonly used or otherwise self-explanatory. *Id.* at 872 (citing *Thomas*, 916 F.3d at 312). The Fourth Circuit in *Perry* distinguished a previous

11

Fourth Circuit decision, *Sizemore v. Berryhill*, 878 F.3d 72 (4th Cir. 2017), that found no error when an ALJ found a claimant had the RFC to work in a "low stress setting defined as non-production jobs [without any] fast-paced work [and] with no public contact," for two reasons: (1) because those descriptors helped explain the non-production phrase, and (2) the descriptors allowed the court to evaluate whether that phrase adequately accounted for the claimant's limitations. *Perry*, 765 F. App'x at 873 n.1. Accordingly, the Fourth Circuit in *Perry* declined to adopt a categorical rule that an ALJ's failure to explain the meaning of a production limitation necessarily requires remand. *Id.* at 873. Rather, if an ALJ addresses a moderate pace impairment using phrases about a production pace, the ALJ must either define or provide context for that phrase, or otherwise address pace so that the Court can meaningfully review the ALJ's decision. *Id.*

Applying these principles, this court, and other courts in this district have similarly distinguished *Sizemore* and held that limitations that restrict a plaintiff's interactions with others, or limitations to work involving simple, routine, tasks, often fail to sufficiently contextualize a "production pace" limitation. *See e.g., Allison L.S. v. Saul*, No. 4:20cv45, ECF No. 17 (E.D. Va. June 28, 2021) (finding non-production rate pace was not defined either directly or through the context of RFC), *report and recommendation adopted*, ECF No. 18 (E.D. Va. June 29, 2021); *Kesha M. v. Kijakazi*, No. 2:20CV616, 2021 WL 5710834, at *7 (E.D. Va. Nov. 15, 2021) (same), *report and recommendation adopted*, 2021 WL 5632581 (E.D. Va. Dec. 1, 2021); *Xavier S. v. Saul*, No. 1:19CV1195, 2020 WL 1015816, at *23–27 (E.D. Va. Mar. 2, 2020) (holding that plaintiff's limitation in interacting with others, limitation to jobs with no more than occasional changes in setting and occasional decision-making, and jobs involving simple routine tasks did not sufficiently contextualize the production limitation in plaintiff's RFC).

In contrast, courts have found no error where the ALJ sufficiently explains a pace-related production limitation by providing sufficient context for the limitation. For example, in *John S. v. Saul*, the court upheld a production limitation where the ALJ explained that the plaintiff "cannot perform work that is 'fast-paced' and based on 'production quotas' but is able to perform 'goal oriented' work in a 'low stress environment.'" No. 1:20CV835, 2021 WL 1724930, at *4 (E.D. Va. Apr. 29, 2021). There, the court found that the ALJ's distinction between "work requiring fast-paced production quotas" and "goal-oriented work" explained the ALJ's meaning and intent. *Id.* Further, courts have found no error where the ALJ provides a pace-related production limitation and clarifies the limitation in the hypothetical question to the vocational expert. *Roman T. v. Saul*, No. 7:19-CV-159, 2020 WL 4233104, at *6 (W.D. Va. Mar. 19, 2020) (upholding ALJ's decision where ALJ limited plaintiff to jobs "without strict production rate or pace requirements" because ALJ's instructed the VE to "eliminate those jobs that have a strict production rate or pace requirement whether that's keeping up with a factory assembly line or having to make a certain number of widgets every hour or day" and that instruction sufficiently contextualized the production limitation), *report and recommendation adopted*, No. 7:19-CV-00159, 2020 WL 4227561 (W.D. Va. July 23, 2020).

Here, at step three, the ALJ found that Plaintiff had a moderate limitation in concentration, persistence, and pace. R. at 14. After declaring Plaintiff's RFC, including the "nonproduction pace workplace" the ALJ further detailed Plaintiff's mental impairments and how such impairments affect her RFC. R. at 15, 17–20. Importantly, the ALJ further explained Plaintiff's moderate pace impairment, and the limitation including no performance of production pace work. R. at 20. The ALJ explained:

> The undersigned provided limits including no performance of production pace work. The claimant[] continue[d] to report of paranoia and periods of high anxiety.

13

> However, there is little objective evidence from the period at issue to support her allegations. Based on the evidence of record, the undersigned provided for unskilled work, in two-hour increments in a nonproduction pace work environment that accommodates periods of stress, which are mostly exacerbated when not complying with medication management.

R. at 20 (citing *Mascio*, 780 F.3d 632). Thus, the ALJ described a nonproduction pace work environment that accommodates periods of stress, and more specifically the ALJ explained, how that environment sufficiently accommodates Plaintiff's pace-related restriction.

Accordingly, under these circumstances, the Court finds that this case is more like *Sizemore*, because the ALJ provided sufficient context to explain the "nonproduction pace" restriction, and how that restriction adequately accounts for Plaintiff's limitations. *See Perry*, 765 Fed. Appx. at 872 n.1. Like in *Sizemore*, where the Fourth Circuit upheld a limitation that required "working in a low stress non-production job[] with no public contact," the ALJ here explained that the nonproduction pace environment must "accommodate periods of stress"—meaning, the work environment must allow for periods in which Plaintiff would not be producing work. Moreover, like in *Sizemore*, the ALJ connected the restriction—a nonproduction pace that accommodates periods of stress—to Plaintiff's periodic paranoia and high anxiety.

Moreover, this case is distinguishable from both *Allison L.S.* and *Kesha M.* In those cases, the ALJ simply stated that the "no production pace" limitation was "to account for the limitation with pace." *Allison L.S. v. Saul*, No. 4:20cv45, ECF No. 17 (E.D. Va. June 28, 2021) (rejecting ALJ's explanation of "no production pace work" to "account for the moderate limitation in pace" as circular reasoning); *Kesha M. v. Kijakazi*, No. 2:20CV616, 2021 WL 5710834, at *7 (E.D. Va. Nov. 15, 2021) (same). While the Commissioner in those cases argued that other limitations in the RFC provided context for the non-production pace limitation, significantly, the ALJ *themselves* did not explain that those other RFC limitations were intended to account for pace. Accordingly,

14

the Court was left to speculate whether those other limitations adequately accounted for the plaintiffs' pace limitations.[5] Here, the ALJ specifically described the nonproduction pace work environment as one that accommodates periods of stress, intended to account for Plaintiff's pace limitations. Accordingly, the ALJ did not err under these circumstances.

### B. Substantial Evidence Supports the ALJ's Conclusion at Step Five that Plaintiff Can Perform Other Jobs in the National Economy.

Plaintiff argues that the ALJ erred at step five by failing to resolve a conflict between Plaintiff's RFC limitation to "simple instructions" and the VE's identification of jobs Plaintiff could perform that involve more than Reasoning Level One as defined in the Dictionary of Occupational Titles ("DOT"). ECF No. 18 at 9–13. Specifically, Plaintiff contends that five of the six jobs identified by the VE, and ultimately relied upon by the ALJ, require either Reasoning Level Two—involving the ability "to carry out detailed but uninvolved written or oral instructions"—or Reasoning Level Three—involving the ability "to carry out instructions furnished in written, oral, or diagrammatic form." ECF No. 18 at 10. In response, the Commissioner argues that the ALJ did not err because there is no apparent conflict between Plaintiff's RFC and Reasoning Level Two jobs. ECF No. 20 at 16–18. The Commissioner further argues that even if the ALJ did err by failing to resolve a conflict, any error was harmless because

---

[5] The Court also notes that a RFC which includes a restriction to work involving a "low-stress environment," as the RFC in *Kesha M.*, is different than an environment that "accommodates periods of stress" as in the instant case. *Kesha M.*, 2021 WL 5710834, at *7. First, in *Kesha M.*, the ALJ stated that the low stress environment was intended to account for the Plaintiff's limitations in adapting and managing herself, and specifically stated that the non-production workplace was intended to accommodate the plaintiff's pace limitation. *Id.* at *5, 7. In contrast, in this case, the ALJ specifically clarified that the "nonproduction pace work environment" itself must "accommodate periods of stress." R. at 20. Second, in *Kesha M.*, the ALJ did not explain whether, or why, a low stress environment would account for Plaintiff's pace limitations. In contrast, here, the ALJ explained that a nonproduction pace work environment that accommodates periods of stress would account for Plaintiff's pace limitations because of her periodic episodes with paranoia and high anxiety, which are exacerbated when she does not comply with her medication management. R. at 20.

15

the ALJ identified one job at Reasoning Level One that did not create a conflict, which is sufficient under the regulations. ECF No. 20 at 15–16.

### 1. *There is No Conflict Between Plaintiff's RFC Limiting Her to Simple Instructions and Jobs Requiring Reasoning Level Two.*

At step five of the sequential evaluation process, the burden shifts from the plaintiff to the Commissioner to determine whether other work economy exists that the plaintiff can perform. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). To meet this burden, the ALJ may rely on the DOT, and may elicit testimony from a VE to "address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Id.* If the VE's testimony conflicts with the DOT, ALJ's must "inquire, on the record, . . . whether the vocational expert's testimony conflicts with the [DOT], and also requires the ALJ elicit a reasonable explanation for and resolve conflicts between the expert's testimony and the DOT." *Id.* at 207–08 (citing SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000)) (internal quotations omitted). The ALJ has an affirmative and independent duty to identify and resolve apparent conflicts between the VE's testimony and the DOT. *Id.* (noting that the VE's affirmative response when asked if her testimony conflicts with the DOT is not enough to fulfill the ALJ's duty). If the ALJ resolves the conflict by determining the VE's explanation is reasonable, and further explains why the VE's explanation is reasonable, then the ALJ can rely on the VE's testimony to support an ALJ's disability determination. *Id.*

The Fourth Circuit has considered whether an apparent conflict exists when an RFC includes restrictions on a level of instruction and the Reasoning Levels in the DOT. Jobs with Reasoning Level One require the ability to "carry out simple one- or two-step instructions," and jobs with Reasoning Level Two require the ability to "carry out detailed but uninvolved written or oral instructions." DOT, Appendix C, 1991 WL 688702. In *Thomas v. Berryhill*, the Fourth

Circuit found that an apparent conflict exists when a RFC limits a claimant to "short, simple instructions" and a VE's identification of jobs involving Reasoning Level Two—i.e., the ability to carry out "detailed but uninvolved instructions." 916 F.3d 307, 314 (4th Cir. 2019). In *Lawrence v. Saul*, the Fourth Circuit clarified that operative limitation which created the conflict in *Thomas* was the limitation to "short instructions" not necessarily the limitation that those instructions be "simple." 941 F.3d 140, 143 (4th Cir. 2019). The Fourth Circuit explained:

> detailed instructions are, in the main, less correlated with complexity than with length. Instructions often include many steps, each of which is straightforward. Driving directions are a good example: they may prescribe many turns, but the turns are generally easy to make, and the route rarely changes, making the directions simple, routine, and repetitive. Further, there is no conflict between 'simple' and 'uninvolved' instructions, as both connote instructions that 'are not complicated or intricate.

*Id.* (citing *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010)). Accordingly, while a limitation involving "short" instructions creates a conflict with jobs requiring Reasoning Level Two, a limitation involving "simple" instructions does not create the same conflict. *See id.*

In this case, the ALJ included a limitation that Plaintiff is able to "understand, remember, and follow *simple instructions*." R. at 15. The VE then testified that Plaintiff could perform the jobs requirements of the following representative occupations: (1) hand packager; (2) industrial cleaner; (3) laundry laborer; (4) mail sorter; (5) folding machine operator; and (6) marking clerk. R. at 63–67. The laundry laborer job requires Reasoning Level One, while the hand packager job, industrial cleaner job, folding machine operator job, and marking clerk job require Reasoning Level Two, and the mail sorter job requires Reasoning Level Three. DOT, No. 361.687-018, 1991 WL 672992 (laundry laborer); DOT, No. 361.687-018, 1991 WL 672992 (hand packager); DOT, No. 381.687-018, 1991 WL 673258 (industrial cleaner); DOT, No. 208.685-014, 1991 WL 671754

17

(folding machine operator); DOT, No. 209.587-034, 1991 WL 671802 (marking clerk); DOT, No. 209.687-026, 1991 WL 671813 (mail clerk or mail sorter).

Based on the Fourth Circuit's instruction in *Lawrence*, there is no conflict between Plaintiff's RFC limiting her to "simple instructions" and Reasoning Level Two jobs requiring "detailed, but uninvolved" instructions. *Lawrence*, 941 F.3d at 143. Despite the Plaintiff's contention that there is a distinction between simple tasks (as was the plaintiff's RFC in *Lawrence*) and simple instructions (as is the Plaintiff's RFC in the instant case), the Fourth Circuit's decision in *Lawrence* specifically clarifies "there is no conflict between 'simple' [as an RFC limitation] and 'uninvolved' [as used in Reasoning Level Two] instructions, as both connote instructions that 'are not complicated or intricate.'" *Id.* Thus, the ALJ did not fail to identify a conflict between Plaintiff's RFC and the hand packager, industrial cleaner, folding machine operator, and marking clerk jobs which require Reasoning Level Two.

   2. *If the ALJ Did Err at Step Five, Any Error was Harmless and Substantial Evidence Supports the ALJ's Decision.*

Even if the ALJ erred at step five, any error was harmless because the ALJ identified at least one occupation that exists in significant numbers in the national economy that Plaintiff can perform. §§ 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) have requirements which [a claimant] is able to meet with [the claimant's] physical or mental abilities and vocational qualifications), 416.966(b) (same).

Plaintiff seems to contend that any job above Reasoning Level One conflicts with a RFC limitation to simple instructions. ECF No. 18 at 10. As addressed by the Court above, jobs requiring Reasoning Level Two do not conflict with Plaintiff's RFC limiting her to "simple instructions." However, the Court did not evaluate whether the mail sorter position—which requires Reasoning Level Three—conflicts with Plaintiff's RFC. Nonetheless, the Court need not

18

determine whether a job requiring Reasoning Level Three conflicts with Plaintiff's RFC because even if it does, any error by the ALJ in failing to identify that conflict was harmless because the ALJ identified four other jobs at Reasoning Level Two, and one other job at Reasoning Level One that Plaintiff could perform. The identification of five other jobs that Plaintiff could perform satisfies the Commissioner's burden at step five.

Finally, even if Plaintiff's argument that any job requiring a Reasoning Level greater than one conflicts with a RFC limitation to simple instructions was correct, the laundry laborer position, which requires only Reasoning Level One, would still be available to Plaintiff. Accordingly, the ALJ's identification of the laundry laborer position would be enough to satisfy the Commissioner's burden at step five. *See Fenton v. Saul*, Civil No. 4:19cv72, 2020 WL 5587710 (E.D. Va. Sept. 17, 2020) (noting that the Fourth Circuit "has upheld as few as 110 jobs in the state available as a significant number).

For the reasons explained above, substantial evidence supports the ALJ's conclusion at step five that Plaintiff can perform other jobs in the national economy.

## VI. RECOMMENDATION

Because substantial evidence supports the Commissioner's decision and the correct legal standard was applied, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 17, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 19, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

                                             /s/ Lawrence R. Leonard
                                             Lawrence R. Leonard
                                             United States Magistrate Judge

Norfolk, Virginia
December 20, 2021